UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON

CIVIL ACTION NO. 05-120-DLB

JAMES KRUER, as Guardian Ad Litem
for and on behalf of S.K. and D.K., minors                                    PLAINTIFF

vs.              **MEMORANDUM OPINION & ORDER**

ALBERTO GONZALES, Attorney General
of the United States, et al.                                                  DEFENDANTS

*****************************

This action originated with Plaintiff's June 17, 2005, filing of a Petition for Writ Under the All Writs Act and Complaint for Declaratory and Injunctive Relief. (Doc. #1) Shortly thereafter, Plaintiff moved for emergency temporary injunctive relief. (Doc. #3) Defendants filed their Response to this motion (Doc. #6), and Plaintiff has replied (Doc. #7). Concluding that oral argument is unnecessary, and having considered the arguments raised by the parties in their respective memoranda, and for the reasons stated herein, Plaintiff's Motion for Emergency Temporary Injunctive Relief will be **denied**, and the Petition will be **dismissed with prejudice.**

### FACTUAL AND PROCEDURAL BACKGROUND

The named Plaintiff, James Kruer, brings this action in his capacity as Guardian Ad Litem for and on behalf of S.K. and D.K., both of whom are minors. S.K. (age 14) and D.K. (age 12) are U.S. citizens. Their mother, Luz Carpenter, is a native and citizen of Mexico. Their father passed away in 1994. Mrs. Carpenter remarried Toby Carpenter in 2001.

Luz Carpenter entered the United States in 1982. In September of 1990 she was convicted in this Court of aiding and abetting in the use of a communication facility in the furtherance of drug (marijuana) distribution, in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. She was sentenced to five years' probation. However, her probation terminated after one year based upon her good behavior and cooperation.

Following Mrs. Carpenter remarriage, she applied for U.S. citizenship. She was, however, notified by the Immigration and Naturalization Service of being charged as removable, based on her prior conviction.[1] According to the record and representations of counsel during a phone conference with the Court, Mrs. Carpenter has exhausted her administrative remedies and has been ordered removed. The Department of Homeland Security has granted a discretionary stay of her deportation until July 1, 2005. According to Defendants' Status Report, the Department will not extend her stay of removal; however, it has agreed to not insist upon her physical removal from the United States prior to July 9, 2005. (Doc. #5)

This case was filed not by Mrs. Carpenter, but rather by her minor children. There has apparently been no prior formal proceeding or administrative challenge by these children in relation to their mother's deportation. In the Court's prior telephone conference with the parties and/or counsel therefor, Plaintiff acknowledged that some of the issues surrounding the children and their welfare were raised in Mrs. Carpenter's administrative

---

[1] The specific statutory basis for Ms. Carpenter's removal was not identified in the Petition, which stated only that she had been convicted as an aggravated felon. (Doc. #1, ¶ 10) Her removal was apparently pursuant to either § 237(a)(2)(B)(i) of the Immigration and Naturalization Act, in that she had been convicted of a violation of United States law relating to a controlled substance, or § 237(a)(2)(A)(iii) of the Immigration and Naturalization Act, in that she had been convicted of an aggravated felony as defined in § 101(a)(43)(B) of the Act. 8 U.S.C. § 1101(a)(43)(B).

proceedings, while other matters, namely the sexual abuse of the children, had not been raised other than in this present proceeding.

In their Petition, the children submit that they depend upon their mother as their sole surviving parent. Both children speak very little Spanish. They have both developed friendships with classmates and teachers here in the United States. Moreover, when they were very young, both children were sexually abused by their uncle. S.K. was 5 years old when this occurred and still receives counseling; D.K. was too young at the time to consciously recollect the abuse.

S.K., who her guardian ad litem submits is particularly dependent upon her mother at this time in her early teenage years, has stated she intends to accompany her mother if she must return to Mexico. This could lead to a multitude of personal and cultural difficulties for S.K., including the language barrier noted above, adjusting to a new school, and leaving people with whom she has established personal relationships. D.K., however, intends to remain in the United States, rather than confront these issues. This decision will have its own consequences, including separating him from his only sister and sole surviving parent.

The specific relief sought by S.K. and D.K. in their Petition and emergency motion is a stay of deportation of their mother, Luz Carpenter. The legal basis for this relief has not been clearly articulated by the children. They ask generally that this Court consider, pursuant to the All Writs Act and its equitable power, any basis which might stay their mother's deportation. They point specifically to the Fifth Amendment, and argue that their mother is "property" to them and/or that their liberty is at stake, the deprivation of either of which violates their due process rights. They also petition for a stay of their mother's deportation until such time as the constitutionality of the REAL ID Act of 2005, Pub. Law

3

No. 109-13, has been determined, and/or until the "U Visa" [8 U.S.C. § 1101(a)(15)(U)] has been effectuated.

## ANALYSIS

### A. Subject Matter Jurisdiction

As with any proceeding, a preliminary consideration is the Court's subject matter jurisdiction. This has also been raised by Defendants in their Response to Plaintiff's Motion.

Plaintiff's Petition asserts the Court has federal question jurisdiction under 28 U.S.C. § 1331, "as Mrs. Carpenter is scheduled to be deported under the INA...." (Doc. #1, ¶ 1). This case is not, however, a petition by Mrs. Carpenter seeking district court review of her order of removal. Had this been such a proceeding initiated by Mrs. Carpenter herself, under 8 U.S.C. § 1252(g)[2] this Court would have no jurisdiction over such a petition. *See Ene v. Phillips,* 99 Fed. Appx. 642, 643 (6th Cir. 2004). The petition in this case was brought not by Mrs. Carpenter but by her children, who were not parties to their mother's deportation proceeding. As such, § 1252(g) does not apply to this situation.[3]

Also relevant to a discussion of this Court's subject matter jurisdiction are two other arguments presented by Plaintiff based upon the immigration statutes, in addition to Plaintiff's general "constitutional rights" challenges. First, Plaintiff submits that a stay of Mrs. Carpenter's deportation should be imposed until such time as the constitutionality of

---

[2] The statute provides, in pertinent part, that "no court shall have jurisdiction to hear any cause or claim *by or on behalf of any alien* arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (emphasis added).

[3] Although the statute indicates the action can be one brought "on behalf of" an alien, Mrs. Carpenter in this case, the face of the children's Petition does not indicate it is being brought on their mother's behalf, though this be the indirect result of their filing. Nor have Defendants cited to any authority interpreting the "on behalf of" language in this manner, and the Court's research reveals no binding authority so interpreting the statute.

4

the REAL ID Act is determined. This argument is unavailing, as Plaintiff has failed to identify the Act's applicability to Mrs. Carpenter's deportation and the present petition by her children. Second, Plaintiff's Petition submits that Mrs. Carpenter's deportation should be stayed until such time as the regulatory standards for obtaining a "U Visa" have been effectuated. This argument is also unavailing, as this Court is without power or authority, equitable or otherwise, to order such in connection with this proceeding by the minor children.

The REAL ID Act of 2005, Division B of Public Law 109-13, is comprised of a series of amendments to various federal laws and was enacted for the stated purpose of protecting against terrorist entry. 119 Stat. 231, 302. The Act took effect on May 11, 2005. Plaintiff's Petition states that the constitutionality of the Act is presently under review by the Fourth Circuit. Be that as it may, the Petition does not explain any legal connection between this cause of action by the minor children and the Fourth Circuit case presently under review, or the direct implications any such pending case would have on S.K. and D.K.'s claims.

In their Memorandum opposing Plaintiff's request for emergency relief, Defendants argue that section 106(a) of the REAL ID Act, codified at 8 U.S.C. § 1252(a)(5), intended to deprive district courts of jurisdiction to review decisions related to an alien's removal. The statute reads, in pertinent part, that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section."

In reply to Defendants' argument, Plaintiff submits that the REAL ID Act should not be "strictly applied" to this case, since to do so would leave the minor children without any

5

form of relief. Plaintiff instead asks that this Court look to section 106(c) of the Act, which provides for transfer of cases from a district court to the court of appeals "If an alien's case, brought under section 2241 of title 28, United States Code [actions for writ of habeas corpus], and challenging a final administrative order of removal, deportation, or exclusion, is pending in a district court on the date of the enactment of this division, then the district court shall transfer the case ... to the court of appeals for the circuit in which a petition for review could have been properly filed ...." 119 Stat. 231, 311.

Neither party's argument as to the applicability of the REAL ID Act is helpful. As noted, the Act became effective on May 11, 2005, prior to the date of Plaintiff's filing herein but apparently more than 30 days after Mrs. Carpenter's final order of removal. Implicit within § 1252(a)(5) relied upon by Defendants is that the jurisdictional limitation on a petition for review pertains to review sought by the individual against whom the order of removal has been entered or issued, in this case Mrs. Carpenter. By the same token, neither does § 106(c) of the Act assist the children by providing a basis for jurisdiction, to transfer this proceeding or otherwise. That section is directed to circuit court transfers of pending actions, by *aliens*, seeking writs of habeas corpus. Thus, the Act neither provides a jurisdictional basis nor creates a jurisdictional barrier.

Plaintiff's other request is that enforcement of the order of removal be stayed until such unknown time as regulations are adopted for pursuit of the "U Visa" passed by Congress in 2000. 8 U.S.C. § 1101(a)(15)(U). This statutory section allows for an alien who has, *inter alia,* assisted with prosecuting criminal activity to petition for status allowing him to remain in this country. Plaintiff offers that Mrs. Carpenter's assistance in the prosecution and conviction of the children's uncle for sexual abuse would support such a petition. This argument, however, lends no support or basis for this proceeding. According

to counsel's representations, the petition for "U Visa" was not pursued by Mrs. Carpenter either as part of her initial removal proceedings or through reopening. Plaintiff states that stay is warranted until such unknown time that regulations for its application are put in place, suggesting Mrs. Carpenter would then qualify. But as noted by Defendants, this is all speculation, at best. Despite the fact that prosecutorial assistance was provided, it does not negate the fact that Mrs. Carpenter herself was convicted of an aggravated felony. Moreover, Plaintiff fails to point to, nor is this Court aware of any legal basis or authority, that would allow it to maintain jurisdiction over this proceeding by Carpenter's minor children for the express purpose of allowing their mother to seek a "U Visa" once the regulations governing application thereof are in place.

Although Plaintiff has failed to identify whether a specific basis for subject matter jurisdiction exists, the Court finds helpful in answering this question the jurisdictional analysis of two other courts faced with comparable situations. In *Application of Amoury,* 307 F. Supp. 213 (S.D.N.Y. 1969) and *Dayao v. Staley,* 303 F. Supp. 16 (S.D. Texas 1969), *aff'd per curiam,* 424 F.2d 1131 (5th Cir. 1970), both district courts were faced with jurisdictional challenges to separate actions filed by infant plaintiffs seeking to challenge INS orders directing deportation of their alien parents.

In *Dayao,* the court ultimately concluded that the plaintiff was without standing to sue because he had failed to show a legal wrong suffered by him or that he had been adversely affected by agency action. *Dayao,* 303 F. Supp. at 19. Reaching this conclusion, however, necessitated the court's consideration of the merits of whether plaintiff had established the invasion of a legally protected right. *Id.* at 18. This was because plaintiff's suit under the Declaratory Judgment Act did not in and of itself confer jurisdiction; it required the plaintiff identify some other statute. In this regard, the court looked to § 702 of the Administrative

Procedure Act (APA), which provides that "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. The court noted that a "legal wrong" under the APA was evidenced by proof of the invasion of a legally protected right, which the court found the infant plaintiff had not shown, nor had the plaintiff shown he had been adversely affected by agency action within the meaning of a relevant statute. *Id.*

Similarly in *Amoury*, the court noted the same limitation with the Declaratory Judgment Act as providing an independent jurisdictional basis for the citizen infant's action challenging deportation of his parents, and also turned to the APA. *Amoury,* 307 F. Supp. at 215. The district court ultimately concluded in *Amoury* that it had subject matter jurisdiction over the infant's petition based upon the APA. Unlike the *Dayao* court, in *Amoury,* the court did not consider whether a "legal wrong" under the APA required consideration of whether a legally protected right had been invaded. Instead, the court noted that the validity of the deportation order itself was not in issue, and therefore the plaintiff had no claim for a "legal wrong because of agency action." *Id.* The court found, though, that plaintiff was a person "aggrieved by agency action within the meaning of a relevant statute" and could therefore maintain his cause of action. This, it concluded, was because "the same statute which assures him citizenship (the Immigration and Nationality Act of 1952) in practical terms, it is contended, denies him the incidents of such citizenship." *Id.* The court found this to be a reasonable interpretation of the APA, in that if aliens had been permitted to utilize it to test the validity of INS orders, a citizen should have no less rights. *Id.*

Based upon these two decisions, the Court finds it has subject matter jurisdiction over Plaintiff's Petition herein.  As in *Amoury,* the children herein assert they have been deprived of rights incident of citizenship as a result of the agency order of removal.  At a minimum, and as in *Dayao,* the merits of the children's challenges should be reviewed to determine whether a legal right conferred upon them by virtue of their citizenship has been invaded.

      **B.**     **Standard for Issuance of Temporary Restraining Orders**

Plaintiff has moved for an immediate stay of Mrs. Carpenter's deportation.  Relief in the form of a temporary restraining order or preliminary injunction is considered an extraordinary remedy.  *See* Fed. R. Civ. P. 65.  Considerations relevant to and balanced by a court in considering such relief are "(1) whether the movant has demonstrated a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable harm; (3) whether an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of such injunction."  *Suster v. Marshall,* 149 F.3d 523, 528 (6th Cir. 1998), *cert. denied,* 525 U.S. 1114 (1999); *see also Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.,* 119 F.3d 393, 400 (6th Cir. 1997).

      **C.**     **Likelihood of Success on the Merits**

S.K. and D.K. do not identify or discuss in detail what constitutional rights they maintain have been violated by their mother's impending removal from this country.  Their Petition and Motion raise generally that deportation of their mother will violate their due process rights and familial rights.  The Court's research reveals that of those courts faced with similar challenges by minor children to a parent's deportation, such constitutional challenges have been rejected.

For example, in *de Robles v. INS,* 485 F.2d 100 (10th Cir. 1973) an alien ordered deported argued that her forced removal impermissibly altered the family unit, in violation of the constitutional rights guaranteed to her citizen children under the Fifth Amendment. The Tenth Circuit concluded otherwise, finding that any impact that immigration laws had on the family unit, which included minor children, was incidental only and did not present a concern of constitutional magnitude. *de Robles,* 485 F.2d at 102.

In *Cervantes v. INS,* 510 F.2d 89 (10th Cir. 1975) the citizen child argued he had "a right to continue[d] ... love and affection of his parents in the United States" under the Ninth Amendment. *Cervantes,* 510 F.2d at 91. This constitutional basis was also rejected upon the same reasoning as that rejecting Fifth Amendment challenges – that any incidental impact of immigration laws on the family unit does not in and of itself constitute a constitutional violation. *Id.*

Citizen children of aliens have also challenged their parents' removal based upon an asserted general right to live and remain in the United States, such that removing their parents and by necessity removing them, amounted to a "de facto deportation." This argument was, however, rejected in *Acosta v. Gaffney,* 558 F.2d 1153 (3d Cir. 1977), in which the court noted that the right of a citizen of minority age to choose residence is purely theoretical. Once the child reaches the age of discretion, a right of choice of residence can be exercised. Until then, the exercise of that right is simply postponed pending the age of majority. *Acosta,* 558 F.2d at 1157-58.

And in *Lopez v. Franklin,* 427 F. Supp. 345 (D.C. Mich. 1977), the court rejected the label of "de fact deportation," noting that "deportation" is a legal term of art representing the result of official expulsion. *Lopez,* 427 F. Supp. at 347. Children of alien parents who are U.S. citizens, noted the court, have not been officially expelled, nor is there an "outright

10

destruction" of any privilege of U.S. citizenship by an alien parent's decision to take a minor child of U.S. citizenship with them upon leaving the country. Citizen status is not lost and the child is free to return "whenever he has the desire and the means ... to do so." *Id.* at 348-49.

These constitutional challenges have also been couched in terms of being denied equal protection of the rights and privileges of U.S. citizenship compared to those children not forced to exit the country. In *Application of Amoury,* 307 F. Supp. 213 (S.D.N.Y. 1969), the citizen child of alien parents claimed an equal protection violation in being denied the same standard of living and education as those citizen children able to remain in the United States. The court rejected this claim, after concluding there was no showing of arbitrary classification by the government, and noting that any differences in such living standards was due to conduct of the parent, not the government. 307 F. Supp. at 216.

The cases note, by analogy, that similar equal protection arguments in the context of other immigration laws have withstood constitutional scrutiny. The case often cited is *Perdido v. INS,* 420 F.2d 1179 (5th Cir. 1969). That case involved a constitutional challenge to § 201(b) of the Immigration and Nationality Act [8 U.S.C. § 1151(b)] on behalf of the minor children of alien parents. Section 201(b) allowed for citizens of majority age to seek admission of their alien parents as non-quota immigrants. The Act's limitation to citizens of majority age was challenged as an unconstitutional denial of equal protection to citizen children under 21 years of age. In rejecting this argument, the Fifth Circuit pointed out:

> [A] minor child who is fortuitously born here due to his parents' decision to reside in this country has not exercised a deliberate decision to make this country his home, and Congress did not give such a child the ability to confer immigration benefits on his parents. This is a reasonable distinction and contains no constitutional infirmity. Not every family with diverse citizenship among its members can be reunited in this country. Congress had to make some distinction. Since minor children do not ordinarily determine where

11

> their own home will be, much less the family home, Congress recognized a rational distinction when it limited the category of those who could confer immigration benefits on their parents to persons over twenty-one years of age. It gave this privilege to those of our citizens who had themselves chosen to make this country their home and did not give the privilege to those minor children whose non-citizen parents make the real choice of family residence.

*Perdido,* 420 F.2d at 1181.

Indeed, for some courts the conclusion that infant citizens of alien parents have no constitutional right to delay removal is considered well settled, without need for specific analysis. *See, e.g., Cortez-Flores v. INS,* 500 F.2d 178, 180 (5th Cir. 1974)(citing *Perdido v. INS,* 420 F.2d 1179 (5th Cir. 1969)); *Enciso-Cardozo v. INS,* 504 F.2d 1252, 1253 (2d Cir. 1974)("it appears to be firmly established that an infant's status as a citizen and his dependence on his alien parent do not prevent the deportation of the alien parent").

The rejection of such constitutional challenges by the various courts noted above is centered around the recognition of Congress' power to regulate immigration. That is, Congress sets the conditions for an alien's presence in this country and has the authority to do so without violating constitutional rights, even where conditions might be burdensome to children or the family unit. *Cervantes v. INS,* 510 F.2d 89, 92 (10th Cir. 1975)("Congress clearly has the '... power to prescribe conditions under which aliens may enter and remain in the United States ... even though their enforcement may impose hardship upon the aliens' children ....'" quoting *Application of Amoury,* 307 F. Supp. 213 (S.D.N.Y. 1969)). *See also Dimaren v. INS,* 398 F. Supp. 556, 561 (S.D.N.Y. 1974)("Entry into this country by aliens has always been a matter of Congressional discretion," and Congress did not give minor children the ability to confer immigration benefits on their parents; citing *Perdido v. INS,* 420 F.2d 1179, 1181 (5th Cir. 1969)).

In this case, for example, if the Court were to permit Mrs. Carpenter to stay in the United States because she gave birth to S.K. and D.K. while in this country, it would create a loophole in the immigration laws not provided for by Congress and which would permit those in the country illegally to ensure continued residence by birth of children here. Courts have consistently rejected such a notion. *Davidson v. INS,* 558 F.2d 1361, 1363 (9th Cir. 1977)(illegal aliens should not gain favored status merely by birth of citizen children); *Acosta v. Gaffney,* 558 F.2d 1153, 1158 (3d Cir. 1977)(permitting illegal alien parent to remain in this country based upon citizen child's asserted right to continue to reside here would open loophole in immigration laws); *Gonzalez-Cuevas v. INS,* 515 F.2d 1222, 1224 (5th Cir. 1975)(permitting illegal alien parents to remain in this country because they gave birth to citizen children would give favored status over those aliens who comply with immigration laws and thereby "stand those statutes on their heads."); *Application of Amoury,* 307 F. Supp. 213, 217 (S.D.N.Y. 1969)(granting stay of deportation because of birth of citizen child would unfairly deprive those patiently awaiting visas).

Though the cases discussed above are older decisions primarily from outside the Sixth Circuit, in *Ayala-Flores v. INS,* 662 F.2d 444 (6th Cir. 1981), the Sixth Circuit expressly adopted the Third Circuit's reasoning in *Acosta v. Gaffney,* 558 F.2d 1153 (3d Cir. 1977). In *Ayala-Flores* the action was not one initiated separately by the citizen child of illegal alien parents. Instead, although the parents admitted their deportability, in appealing the immigration's judge's ruling ordering them to leave voluntarily, they asserted that "deportation of illegal aliens who are the parents of a minor United States citizen, constitutes an unconstitutional de facto deportation of a citizen." *Ayala-Flores,* 662 F.2d at 445. The Sixth Circuit disagreed. Though recognizing that the citizen child enjoyed "all the rights of United States citizenship, including the right to live in the United States, we do

not agree that deportation of her parents is an unconstitutional abridgement of those rights." *Id.*

In reaching its conclusion, the *Ayala-Flores* court adopted *Acosta's* analysis that Congress did not give a child of illegal aliens fortuitously born here the power to confer immigration benefits on his parents, since infants below the age of discretion are essentially incapable of exercising the right of citizenship. *Id.* at 445-46 (citing *Acosta v. Gaffney,* 558 F.2d 1153, 1157 (3d Cir. 1977) and *Perdido v. INS,* 420 F.2d 1179, 1181 (5th Cir. 1969)). After noting this reasoning, the Sixth Circuit concluded as follows:

> Petitioners' child, once she reaches the age of discretion, will be able to decide for herself where she will live, and at that time, she will be free to return and make her home in this country. Her parents' deportation will not affect here [sic] right to do so. Until that time, we presume petitioners wish her to reside with them, in Mexico or elsewhere. Petitioners, however, cannot extend their illegal stay by claiming that their deportation will deprive their child of citizenship rights. Were we to hold otherwise, we would create a substantial loophole in the immigration laws, allowing all deportable aliens to remain in this country if they bear children here.

*Id.* at 446. Thus, the Sixth Circuit's analysis of the extent to which the constitutional rights of a citizen child of alien parents impacts the ordered deportation of the parents is consistent with the analysis of the other jurisdictions earlier called upon to consider the question.

S.K. and D.K., to support their position, primarily rely upon a New York district court decision, *United States v. DeParias,* 631 F. Supp. 1530 (S.D.N.Y. 1986), *aff'd,* 930 F.2d 908 (2d Cir. 1991). However, this case is not helpful to their cause. The exclusive focus of *DeParias* was the trial court's consideration of whether an illegal alien convicted of serious crimes involving moral turpitude was entitled to a recommendation of nondeportation from the sentencing court. The authority to make such a recommendation was provided by statute. *DeParias,* 631 F. Supp. at 1531 ("Congress, in vesting discretion

in the courts to make a recommendation against deportation, recognized that automatic deportation might not be warranted in individual cases."). The trial court's factually specific analysis of the alien's particular circumstances was directed only to consideration of whether a recommendation of nondeportation under the statute would be made. One of the facts included in the court's consideration was defendant's ability to maintain a "normal relationship" with her two minor children, who were born here and therefore U.S. citizens, were she to be deported following her release from incarceration.

Plaintiff's reliance on *DeParias* is misplaced. That court's consideration of the family relationships was in the exclusive context of an express statutory provision not at issue here. The *DeParias* court was charged, pursuant to statute and upon the alien's request, with making a recommendation as to deportation. This court is not charged with making such a recommendation. That decision has already been made by the executive branch, with limited ability of this district court to pass upon that decision. Instead, this court is charged with determining whether a legal basis exists upon which the citizen minor children of an illegal alien may challenge the removal of their parent. This was not the determination at issue in *DeParias,* nor is this determination impacted by the court's analysis in *DeParias.* As previously noted, the majority of courts faced with this question have held that a citizen child is unable to stay removal or deportation of an alien parent, based upon the child's constitutional rights derived from his or her citizenship. Of particular significance on this point is the Sixth Circuit's decision in *Ayala-Flores*, which is binding on this Court. See also Newton v. INS, 736 F.2d 336, 342-43 (6th Cir. 1984).

In summary, Plaintiff has produced no specific authority to support the contention that the deportation of the children's mother will violate S.K. and D.K.'s constitutional rights.

15

Given that virtually all of the authorities hold contrary to Plaintiff's position, the conclusion required of this Court is clear.

### D.     Consideration of the Remaining Factors

In considering emergency relief, a district court is typically called upon to balance the relevant four factors. This general standard applies, "unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II,* 119 F.3d at 400. The Sixth Circuit commands that "a finding that the movant has not established a strong probability of success on the merits will not preclude a court from exercising its discretion to issue a preliminary injunction if the movant has, at minimum, shown serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Id.* (internal quotations and citations omitted). This standard has not, however, been shown in this case.

Plaintiff has failed to establish a strong probably of success on the merits, as discussed above. In the Reply, Plaintiff has understandably focused upon the various harms that will be imposed upon the children resulting from their mother's departure from this country. Plaintiff submits that these harms imposed upon the children substantially outweigh what Plaintiff portrays as, on balance, the minimal impact to the government interest. This characterization, though, downplays the significance of the government's interest in executing the immigration laws and avoiding the creation of loopholes in those laws through petitions by citizen children born of illegal aliens. But even were the Court to accept Plaintiff's balancing argument, Plaintiff has still not shown "serious questions going to the merits" so as to warrant any further consideration of the request for emergency temporary relief.

### CONCLUSION

In summary, accepting that the Court has subject matter jurisdiction over this proceeding and that the minor children have standing, they nevertheless are unable to point to any applicable constitutional basis to challenge their mother's removal. This holds true not simply for purposes of injunctive relief, but goes to the merits of their Petition as well. Accordingly,

**IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion for Emergency Temporary Injunctive Relief (Doc. #3) is hereby **denied;** and,

(2) Plaintiff's Petition for Writ Under the All Writs Act and Complaint for Declaratory and Injunctive Relief is hereby **dismissed with prejudice.**

This 28th day of June, 2005.

Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\Opinions\2-05-120-MOO.wpd